IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 6, 2011 Session

## CHARLES B. CHAPPELLE ET AL. v. EDWARD LEE BURCH ET AL.

**Appeal from the Chancery Court for Sequatchie County**
**No. 2094     Jeffrey F. Stewart, Chancellor**

_____

**No. M2011-01081-COA-R3-CV - Filed March 8, 2012**

_____

Plaintiffs appeal from trial court's finding that their neighbors, the defendants, were not in violation of an Agreed Order, which stated that the neighbors' land could be used only for residential purposes or for commercial use as a stable and for pasturing of horses, but for no other purpose. Plaintiffs contend that horse shows conducted on the property violated the terms of the Agreed Order. The trial court found that horse shows were an aspect of the commercial stabling business in Sequatchie County and, therefore, did not violate the terms of the Agreed Order. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

John A. Beam, III, and Andrew Cameron, Nashville, Tennessee, for the appellants, Charles B. Chappelle and wife, Kathleen R. Chappelle.

Howard L. Upchurch, Pikeville, Tennessee, for the appellees, Edward Lee Burch and wife, Elizabeth Hope Burch.

## OPINION

This action is a dispute between two adjacent landowners. In 2001, the defendants, Edward and Elizabeth Burch, sold a small portion of the property they own in Sequatchie County, specifically a six-acre tract, to the plaintiffs, Charles and Kathleen Chappelle, upon which the Chappelles built the residence where they now reside. The warranty deed conveyed by the Burches to the Chappelles contained the following deed restrictions:

3. No livestock shall be allowed . . . except that the keeping of horses, cattle, dogs, cats, or other household pets is permitted, providing that nothing herein shall permit the keeping of horses, cattle, dogs, cats, or other animals for commercial purposes.

6. No commercial use or trade or non-residential activities shall be permitted on the premises.

The property retained by the Burches includes a commercial barn that is adjacent to the Chappelles' property, which pre-existed the 2001 deed to the Chappelles.

In October 2005, the Chappelles filed an action in the Chancery Court of Sequatchie County alleging that the restrictions contained in their warranty deed, and various deeds to surrounding properties sold by the Burches, created a duty for the Burches to remove their barn and ensure that no commercial activity was conducted on the property adjoining the Chappelles' property. After an answer and amended pleadings were filed, the parties settled their differences by entering into an Agreed Order on August 12, 2008. Pursuant to the Agreed Order, a portion of the Burches' property was not to be used for any commercial use; however, the Burches' remaining property, which included the barn, could be used "only for residential purposes or for commercial use as a stable and for pasturing of horses, but for no other purposes." This concluded the initial action.

In the summer of 2009, the Burches leased their barn and property immediately adjacent thereto to Daniel Stephenson for commercial stabling. Mr. Stephenson began holding horse shows on the property in March 2010, initially one show per month and later two shows a month. On September 3, 2010, the Chappelles filed a Petition for Contempt contending that the Burches were in violation of the Agreed Order; specifically, that "horse shows violated the provision that the barn could be used "only for residential purposes or for commercial use as a stable and for pasturing of horses, but for no other purposes." They also alleged that conducting horse shows on the property was in violation of the restrictive covenants in the 2001 deed.

At a full evidentiary hearing on November 23, 2010, the Burches presented the testimony of several witnesses who testified regarding the custom and usage of commercial stabling in the Sequatchie County and adjoining counties. Each of the witnesses testified that holding horse shows in conjunction with commercial stabling was a common practice. The Burches also presented the testimony of neighbors who did not object to the horse shows that occurred on their property. The Chappelles testified, addressing the nuisance caused by the horse shows and why they believed horse shows violated the 2008 Agreed Order and the

restrictive covenants in the 2001 deed. Following the hearing, the trial court took the matter under advisement.

The trial court issued its ruling in an order entered on April 13, 2011. The court held that the use of the barn for stabling, care, and pasturing of horses and for horse shows was authorized and in compliance with both the restrictive covenants in the 2001 deed and the August 12, 2008 Agreed Order because, as the court explained, horse shows were a common aspect of the commercial stabling business in Sequatchie County and surrounding counties. Therefore, the trial court held that the Burches were not in contempt of court. The Chappelles filed a timely appeal.

## STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is de novo, and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Id.*; *see also The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness, and "we must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). We also give great weight to a trial court's determinations of credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). Issues of law are reviewed de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

## ANALYSIS

The Chappelles contend that having horse shows on the Burches' property violates the restrictive covenants and the August 2008 Agreed Order. They further contend that the trial court erred by expanding the restrictive covenants to include a commercial stable and horse show operations without notice of the Appellants and the community.

The trial court found that the Chappelles failed to prove that conducting horse shows on the property was in violation of the provision that "the commercial use of the real property by the Defendants, . . . for the stabling, care and pasturing of horses, and for horse shows, is authorized and in compliance with the restrictive covenants applicable to the parties' real properties and said prior order, " and that "horse shows such as those conducted by the

[Burches] and/or the [Burches'] lessees on the [Burches'] real property are in fact an aspect of or a part and portion of the business of commercial stabling of horses in Sequatchie County, Tennessee and the immediate area surrounding this county." Therefore, the issue for this court to determine is whether the evidence in the record preponderates against these findings. *See* Tenn. R. App. P. 13(d); *see also Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d at 296.

The record does not contain a transcript of the evidence at the hearing on the Petition for Contempt; however, the parties submitted a detailed Statement of the Evidence. The Statement of the Evidence reveals that the Burches presented numerous witnesses to support their claim that the custom and practice for operating commercial stables in the community included horse shows as a part of that business. One of their witnesses, B.R. Easterly, the owner of a commercial stable in Marion County, testified that he was familiar with the commercial stabling business in the area and that it was customary for commercial stables to hold horse shows at their stables. Another witness for the Burches, Jimmy Morris, the Bledsoe County Sheriff, who operates stables and is affiliated with stables and auction companies, testified that he is involved with the horse business in the Bledsoe and Sequatchie County area and that the majority of commercial stables in the area hold horse shows. Defendant Ed Burch testified that pasturing and stabling horses includes conducting horse shows. Daniel Stephenson, who leased the property from the Burches and operates the stables and conducts the horse shows on the property, testified that it is customary in the county to operate horse shows as a part of a commercial stable business. By contrast, the Statement of the Evidence reveals that the Chappelles presented no proof on this issue, their proof only pertained to the nuisance created by the horse shows. Accordingly, the evidence presented by the Burches concerning the customary practices in the community was not refuted.

Based upon the evidence in the record we cannot conclude that the evidence preponderates against the trial court's finding that horse shows, such as those conducted on the Burches' property, are a customary part of the business of commercial stabling of horses in Sequatchie County and the surrounding counties. Therefore, we affirm the trial court's ruling that the Burches were not in contempt of the Agreed Order and affirm the trial court in all respects.[1]

---

[1]The Chappelles also argue that the trial court erred in applying the clear and convincing standard of proof to their Petition for Contempt. However, the trial court's order does not state that it applied this standard, the transcript of the hearing is not in the record, and the Chappelles do not cite in their brief where the trial court applied this standard. Therefore, we find no basis upon which to rule that the trial court applied the improper standard. Nevertheless, based upon our review of the record, we believe that the Chappelles failed to demonstrate by even a preponderance of the evidence that the Burches were in violation of the Agreed Order.

**IN CONCLUSION**

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the Appellants, Charles and Kathleen Chappelle.


_____
FRANK G. CLEMENT, JR., JUDGE